Good morning everyone. Our first case this morning is United States v. Henderson. Mr. Patton. Good morning, Your Honors. May it please the Court, Counsel. My name is Tom Patton and I'm here today representing Raymond Henderson. Mr. Henderson has a protected liberty interest. From being shackled at pretrial hearings absent an individualized finding that he presents a risk of danger of acting out in the courtroom or of trying to escape. Now he has this protected liberty interest that's protected by the Due Process Clause because the right not to be routinely shackled at pretrial hearings is deeply rooted in the common law and therefore was in Judge Myerscough's finding that no such right exists is in error and should be reversed. So how do we get to the merits? How do we deal with the jurisdictional problem and can you tell me why you chose not to pursue this as a writ of mandamus? We chose the collateral, we chose this route because I'm not sure about the writ of mandamus because part of the requirements for writ of mandamus that it has to be a clear duty and while we do think that this was clearly part of the common law and a due process right, if you bring the writ of mandamus then you have the issue of, well is the right clearly established? Is this just a ministerial act? It's so clear that you have to order the judge just to take the act that she has to. There's also, and that's often the use of a writ of mandamus, and you've got some challenges on the collateral order doctrine. Well, your honor, I actually disagree on the collateral order doctrine because it's, first of all, I think the first two prongs are clearly met because Judge Myerscough's order clearly completely addresses this issue and it is totally divorced from the merits of the underlying case. And so then you just get down to, is her decision virtually unreviewable on appeal from a final judgment? And I think looking at Stack v. Boyle and Sell v. United States, and in fact in this court's Rinaldi case, saying that an order, ordering someone on bond to do an in-custody psychiatric examination is immediately appealable under the collateral order doctrine because that liberty that they're going to lose just cannot be replaced, can't be remedied on direct appeal, even though like in Rinaldi, it's not going to have anything to do with the merits of the case. He's going to go in, get the psyche vial, and unless the psyche vial says that he can't stand trial, there's going to be a trial. It's not going to have anything to do with the merits of the trial, and so there's no relief you can get, and it's the same in Sell. It's not actually true. Deck itself, the Supreme Court case that you're, it's effectively challenging here, relying on and challenging at the same time. It was an appeal from a final judgment. Correct, Your Honor, but Deck actually involved the defendant appearing before the capital sentencing jury in change, in full handcuffs and leg irons and everything. And so that actually happened so the Supreme Court could say, we can review what actually happened. We can review the trial, or the, not the trial record, the record of the second sentencing hearing and see whether or not we think there is prejudice. Here, this shackling is not going to occur at trial. Mr. Henderson goes to trial. He's not going to be in five-point restraints. I understand that you're challenging the use of restraints in the pretrial proceedings in front of the judge. Correct. Right, why can't that be reviewed on final judgment? Because there is no remedy. Number one, if Mr. Henderson is acquitted, there's no way he can get... That's always a possibility. That's not a basis for collateral review. The Sell opinion itself made that very point, that part of why it was, and this was in the majority of the Sell opinion, responding to the dissent's claim that this should not be cannot undo the harm even if he is acquitted. Indeed, if he is acquitted, there will be no appeal through which he might obtain review. That was specifically a part of the Supreme Court's analysis in Sell, saying that the forced medication order was appealable under the collateral order doctrine because it could not get effective relief. And they also made the point that said, hey, the forced medication might make the trial itself unfair, but that is a separate issue of whether he should be medicated in the first place. And he has a liberty interest not to be forcibly medicated, and that liberty interest could not be vindicated on an ordinary direct appeal, which is why the forced medication argument was immediately appealed. This is not in that category of claim. This is a DEC claim under DEC v. Missouri, and that case was a review of a final judgment, and the court granted effective relief. And so why can't that likewise happen here on review of a final judgment? I would not agree with the characterization that this is a DEC claim. We say that it's a DEC line of cases and DEC and its predecessors. But DEC dealt with shackling before the jury. Now it's a capital process of capital sentencing rather than a jury trial. Right, but a judgment here can be reviewed following final judgment and reversed based on a shackling error. Not one that affects trial because he's not going to be shackled at trial. And so it's... Right, but if there's an ultimate finding in your favor on the merits that shackling at pretrial proceedings is unconstitutional, effective relief can be granted in the form of a reversal if the error is proven to be harmful. I disagree with that. Or stated differently if the state or if the government can't prove that the error was harmless. Your Honor, I just... This is not a forced medication issue. This is a shackling claim. Let's deal with the shackling cases. Shackling cases are reviewed on final judgment. A shackling case where the argument is that you were shackled in front of the jury and that being shackled in front of the jury caused your actual trial procedure to be unfair, yes, can be reviewed on direct appeal. But that is not our claim. DEC dealt with shackling in front of a jury. It did not address this particular issue. Now we think the reasoning of DEC supports our claim, all right? Clearly we do and that's what we argued. But our claim is not the identical claim that DEC had. In fact, DEC says at the beginning of the opinion said the issue here is shackling in front of a capital sentencing jury. That's not shackling pre-trial. Mr. Patton, on the merits, you said you have no objection to ankle shackling in these proceedings for security reasons as a blanket policy. The next defendant might. So are we going to be deciding all these issues on interlocutory appeal and will we be reviewing the individual determinations on interlocutory appeal under your approach? I don't think so. And Your Honor... Distinguish on for appellate jurisdiction purposes between the blanket policy and an individual determination that's erroneous. An individual determination that is erroneous means that you are actually reviewing the judge's exercise of the discretion to say has the government carried its burden to prove that this person is a danger to act out in court or is a flight risk. And so you're reviewing... I understand that. But for purposes of the elements of the collateral order doctrine, what's the difference? There's not. I mean, you're right in that in the sense that if we think that they've made the wrong decision in doing the actual... if she would do individualized hearings and we think that's wrong under the logic of our collateral order doctrine, that would be appealable. Now, as a practical matter, I don't think that you're actually going to have those resources and time, obviously. But in other cases, a defendant who has no defense on the merits and is looking for a way to drag things out might easily choose the interlocutory appeal route. As a practical matter, I doubt that there would be very many of any defendants that end up getting fully shackled at pre-trial proceedings because I don't think they're going to have... Well, the objective to having ankle shackles on. Then, it's like any appeal of any issue, Your Honor. Once it gets appealed and this court issues a ruling on it that sets out what the rule is, and if it's a ruling that routine ankle leg irons violates the due process, then they're not going to do routine ankle. I mean, we made that offer, number one, because that's the way the court handled the civil jury trial in Lemons. And so, we put that out as in any case where even if you think you're right on the merits and you should get 100% relief, if there is a way to resolve the matter short of having to go all the way to the end and resolve the merits where you get a little bit less, but that you're comfortable with that, we put that out as an option for the court and we put that out as an option to the district court. Thank you. Thank you. Mr. Baum. Thank you. May it please the court. Jason Baum on behalf of the United States Council. We disagree that the second prong of the collateral order doctrine is also satisfied in this case. That is whether an important right has been decided separate from the issues. And the Supreme Court has said that the collateral order doctrine does boil down to some degree of a value judgment of the right that's implicated. And we think that's part of what separates this from the cell of cases and the notion of an acquittal is in cell, it was clear that it was the magnitude of the intrusion of an injected antipsychotic medication was part of why that was reviewable. That type of magnitude of claim just isn't made in the shackling case. Because it's just not as important? I think that's right. I mean, there are other views on that. Could you address, Mr. Baum, in this case, the government's briefs and in the Sanchez-Gomez case pending in the Supreme Court, the government's briefs suggest that defendants in this situation should just file a separate civil suit. Who would the defendant be? I believe the defendant would be the United States Service, the pretrial detainees. They're just following orders of a district judge. Well, what they would be challenging, I believe, Your Honor, is the national policy directive. No, they'd be challenging the orders of a district judge presiding in her courtroom. Do you sue the judge? Well, if it is that you're suing the judge, that would not be a viable claim, Your Honor. Our view is that this is part of the detention, and civil pretrial litigants have brought civil cases challenging the conditions of their confinement, and we view this as part of that. I have real trouble understanding that approach when you're talking not about conditions of confinement in jails or in prisons or in transport, but in the courtroom itself. And perhaps, Your Honor, the best course is to at the conclusion of the final judgment of this case. And so, if we go that route, which you are also recommending, how would the ... Picture a scene for me in which the defense would be able to overcome an argument that any error along these lines at a pretrial hearing was harmless. I think there would be great difficulty in that. Can you imagine a situation in which it was not harmless? I think ... I mean, it would be a fairly extreme situation where the judge did something to suggest that, in fact, the implicit bias or any bias was triggered by the defendant being shackled before him or her. Would the judge have to say on the record, I didn't believe you at the motion to suppress because you just look so suspicious in those jail clothes and shackles? I mean, again, I think it would have to be an extreme example. And I do think, Judge, that part of ... So why shouldn't we treat this as a mandamus petition? We can give the judge an opportunity to respond. I think, as counsel stated, a mandamus is that the right is clearly due. And here, there is no right clearly due to pretrial detainees not being shackled before ... So how would this issue ever be decided? Well, it would be decided as it was in the Second Circuit and the Eleventh Circuit, Your Honor, after a final judgment was brought in both of those cases, or both of those circuits, where they challenged the shackling before a judge. And both the Second and the Eleventh Circuit, consistent with the Supreme Court and DEC, said that is not a constitutional right to be unshackled before a district judge. Well, we have the dictum in DEC, which has its historical accuracy problems. But if one thought that there were such a right, how would it ever be decided under the government's approach? If there was a right to be unshackled before a judge? Yes. It could be challenged ... Well, to have an individualized determination, at the very least. To have an individualized determination, I believe, again, you would have to challenge it after your final judgment, as they did. Where you could not show prejudice. I'm sorry? Where you could not show prejudice in terms of the conviction. Well, that's separate from whether there's a constitutional right, I believe, Your Honor. There could be such a right that is a harmless violation. That happens to other constitutional ... Let's turn this around. Suppose the judge decides to take a particular notorious defendant with a long record of dangerous behavior and decides, you know, I'm really devoted to this appearance of fairness and dignity in my courtroom, and I'm not going to allow any shackles on this person. You have enough personnel to keep this person secure in the courtroom, so I'm not going to allow shackling. Could the government appeal that? I don't believe so, Your Honor. It would not be ... The government's due process right, I don't believe, is being violated there, and here, the defendant's saying that it's his individualized due process right that's being violated. If the judge makes an individualized determination, I don't think the government has any claim on appeal to challenge that. Okay. Thank you. And just returning, Judge Sykes, you had discussed when an acquittal occurs. Flanagan, I believe, the Supreme Court case talks directly about that in that many ... Suppose this is a right, and suppose it's violated, that the rights ... Violations of the rights of a defendant who's acquitted are oftentimes cured by an acquittal, and we believe that that would be the case here. It's just not an issue. With that, unless there are any other questions for the government, we will press onward. All right. Thank you. Thank you. Mr. Patton. Your Honors, if you think treating the ... Using a writ of mandamus is the better procedural route, we would encourage you to do that. I mean, that's what we will do if we lose this appeal on ... You didn't ask for it. No, but ... Well, if you don't, then our next appeal, instead of relying on the collateral order doctrine, will ask to issue a writ of mandamus. I mean, we did spend some time trying to ... By then, we'll have an answer from the Supreme Court. We actually won't, because the issue they granted cert on was whether or not the Ninth Circuit's jurisdictional argument was correct. Having admitted that the individual defendants' cases were moot because the individual defendants' criminal cases had already ended, so that's the only issue that the Supreme Court granted cert on. And Sanchez-Gomez, in that case, is actually structured as a writ, right? It's sort of a class action writ. That's what the Ninth Circuit did to avoid the mootness issue, because all four of the named defendants in that case, by the time the Ninth Circuit ruled, had all ... Their cases were completely finished. But it treated it as a writ, as an underlying case. Then it had those additional mootness complications, but it's a writ of mandamus case. The defendants originally brought it as a collateral order. And the Ninth Circuit rejected that approach and took the writ of ... Correct. Yes. Yes, Your Honor. Right. And so the Supreme Court will tell us whether that's an appropriate maneuver on the part of an appellate court. When the individual defendants' cases are moot ... Mr. Henderson's case, whatever it is, it's not moot, because his case is still pending. He still is going to have, at a minimum, a guilty plea or a pretrial hearing. Right. So he's going to be subject ... The Ninth Circuit didn't make that maneuver to avoid a mootness issue. They did it to get around the collateral order issue. They did, Your Honor. But in doing that, they distinguished Howard, where Howard found that you could use the collateral order doctrine. The court didn't distinguish it. It just said, we're not going to revisit Howard or decide whether this is appropriate under the collateral order doctrine. We're just going to reconstrue this as a mandamus petition. And several other circuits also have said on many occasions that they can, when appropriate, convert an appeal into a writ of mandamus. And so we would obviously have no objection to that. Okay. Thank you. Thank you. Our thanks to both counsel. The case is taken under advisement.